UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ACERGY US INC., fka STOLT OFFSHORE INC. | § § § | |
| VS. | § § | CIVIL ACTION NO. 3:09-cv-178 |
| UNITED STATES OF AMERICA (INTERNAL REVENUE SERVICE) | § § § | |

## MEMORANDUM AND ORDER

**I.     INTRODUCTION**

Before the Court are the competing motions for summary judgment of the Internal Revenue Service (the government), Newton B. Schwartz, Sr., individually and as trustee for the Kemper, Queen & Schwartz Trust (Schwartz and/or Trustee), Benton Musslewhite, Sr. and Carolyn Musslewhite (the Musslewhites), and Provost Umphrey Law Firm, LLP (Provost Umphrey), concerning attorneys fees that were recovered by Musslewhite in a personal injury lawsuit.  The Court has reviewed the innumerable motions, responses and exhibit attachments and determines that all motions not already or concurrently addressed, are resolved in this Memorandum and Order.

**II.    FACTUAL BACKGROUND**

The genesis of this litigation is the attorneys fees arising from the contingency fee contract that Musslewhite entered into with Rayong Ak Nuing, individually and Becha Anak Medan, and Nuing Anak Asap as parents and guardians of Rayong Ak Nuing, a minor. Musslewhite entered into a contingency fee contract with the Nuings whereby he was employed

to prosecute Rayong Ak Nuing's personal injury suit. In turn, Musslewhite would receive as an attorneys fee a standard percent upon recovery.

On March 5, 2007, while the suit was pending, and before it was settled, Musslewhite executed a non-recourse note with options in the amount of $25,000 payable to the Chaffin Law Firm Employee Pension Trust. Three days later, Musslewhite executed a second non-recourse note to the Chaffin Pension Trust, evidencing a second loan in the amount of $25,000. The notes totaled $50,000, and provided for a rate of interest of four percent (4%) per month. As a result, the total currently owed by Musslewhite exceeds $130,000. The notes also provided that Musslewhite would not incur personal liability on the notes except from the proceeds of fees and expenses in Cause No. 03-0576, *Next Friends of Rayong Ak Nuing v. Stolt Offshore, Inc., et al.*, 10th Judicial District Court, Galveston County, Texas. Simultaneously, with the execution on the second note, Musslewhite executed a security agreement collateralizing the note(s). The Chaffin Pension Trust filed the appropriate Uniform Commerical Code Financing Statement on April 13, and thereafter, the notes and security agreements were assigned to Schwartz, Trustee of the Kemper, Queen & Schwartz (Jr.) Trust. Hence, the Kemper Trust claims ownership of the notes.

The Rayong suit was settled with Acergy, U.S., Inc., formerly known as Stolt Offshore on or about May 15, 2009, for the sum of $338,531.85. An attorney's fee and expenses in the amount of $214,500, were approved by the state court. Acergy, due to the dispute between and among the parties, interpled the attorney's fee and costs into the registry of this Court upon removal of this case to federal court by the Internal Revenue Service.

Before the Court are the government's motion for partial summary judgment (Doc. No. 84), Trustee Schwartz's motion for summary judgment (Doc. No. 78) and the parties' responses,

and replies (Doc. Nos. 101, 102, 111 and 112). The Court addresses these contending positions hereinafter.

## III. CONTENTIONS OF THE PARTIES

### A. Schwartz's Motion and Contentions

Schwartz concedes that the government created a lien(s) on Musslewhite's personal and real property when it filed Notices of Federal Tax Liens on February 1, 2006. However, Schwartz asserts that the government's subsequent Notices of Federal Tax Lien, filed on and/or after June 4, 2007, are inferior to his, the Trustee's, UCC Lien filed on or about April 13, 2007, with the Secretary of State. According to Schwartz, the federal liens total, more or less, $40,466.29, as of June 28, 2010.

Schwartz's assertion that his UCC Lien is superior to the government's subsequent [after April 13, 2007] lien is based on federal statutes. *See* 26 U.S.C. §§ 6321, 6323(a) and (c), 28 U.S.C. § 6323(h)(1). Schwartz reads these statutes as recognizing that a state filed UCC Lien is a "security interest" when the property to which it attaches exists. Hence, the security interest is protected by state law where valuable consideration was exchanged for the lien. *See Id.* at § 6323(h)(1).

In the alternative, Schwartz contends that "even if notice of the government's lien [had] been filed and [his] security interest [came] into existence after the notice…," the government recognizes the "commercial liens over federal tax liens in certain circumstances." In this regard, Schwartz cites to § 6323(c)(1) and argues superiority of his lien because it is a commercial lien that has attached to qualified property covered by the terms of a written agreement that was executed prior to the filing of the tax lien. In addition, he argues, the lien is protected under state law, as evidenced by a commercial transaction's financing agreement. *Id*. In all respects,

3

including his response to the government's motion for summary judgment, Schwartz asserts that the government's lien is either limited or inferior.

   B.  <u>The Government's Motion and Contentions</u>

  The government seeks summary judgment in its favor against the Musslewhites, the Kemper Trust, the Provost Umphrey Law Firm and Tech Trans International, Inc., for the interpled attorneys fees ($214,500) and accrued interest. The Court is of the opinion that in addressing Schwartz's claim, it resolves, through logic, all other claims that have not been addressed.

  It is undisputed that the government's claim arises out of federal tax liens filed against the Musslewhites concerning personal income taxes owed since 1997. The government's liens, concerning taxes due in 1997 and subsequent years, are evidenced by Federal Tax Liens filed in June and August 2007, March and September 2008, and March 2009. What is in dispute is the superiority of the government's liens.

  The government contends that Schwartz was not a holder of a security interest as described in 26 U.S.C. § 6323(a), prior to the time the government filed its notices of tax liens. In this regard, the government asserts that contingent claims for attorneys fees remain contingent [*inchoate*] until they are fixed by a decree or judgment. Prior to the time of fixing i.e., "earned by performance," an attorney merely has a right to be paid at the time of settlement or decree. Hence, the government distinguishes a right to a "contingency fee" from an "earned fee" and concludes that a UCC lien could not attach to an unearned fee such as one existing under the Musslewhite contingency fee agreement. The government concludes that its federal tax liens are "first in time" since they were filed prior to May 15, 2009, the date that the state court approved

the Rayong Ak Nuing settlement. Therefore, the government asserts that Schwartz's liens are inferior.

## IV.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006). Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial."* *Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164. To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377,

380 (5th Cir. 1998). In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

## V. ANALYSIS AND DISCUSSION

Schwartz relies on several provisions of the tax code as support for his position that post-2006 federal tax liens are inferior to his UCC Lien of April 13, 2007. Portions of the relevant sections of Title 26 provide that "even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing but which"—

    (a)    is a qualified property covered by the terms of a written agreement entered into before tax lien filing and constituting—

        (i)    a commercial transactions financing agreement,
        (ii)    a real property construction or improvement financing agreement, or
        (iii)    an obligatory disbursement agreement, and

    (b)    is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation.

*See* 26 U.S.C. § 6323(c)(1) (A) and (B). A security interest is defined as "any interest in property acquired by contract for the purpose of securing payment or performance of an obligation… A security interest exists at any time [that] the property is in existence and the interest has become protected under local law…[and]…at such time, the holder has parted with money or money's worth." 28 U.S.C. 6323(h)(1) (A) and (B).

"Federal tax liens do not automatically have priority over all other liens. Absent provision to the contrary, priority for purpose of federal law is governed by the common law principle that "the first in time is the first in right."' *United State v. McDermott, et al.*, 507 U.S. 447, 449 (1993) (internal citations omitted). Because Schwartz contends that his UCC Lien is

6

superior—first in time—to that of the Internal Revenue Service, two issues must be resolved. First, the Court must determine by the date of filings whether the UCC Lien is "first-in-time" to the federal tax lien filings. This simply requires establishing the date(s) that each lien was filed.

The evidence shows that the disputed funds arise out of a 2002 contingency fee contract that Musslewhite acquired from his clients, the Nuings, who employed him to prosecute Rayong Nuing's personal injury suit. In need of cash, Musslewhite executed non-recourse notes to the Chaffin Law Firm Employee Pension Trust. On April 13, 2007, the Chaffin Trust caused to be filed with the Secretary of State of Texas a UCC Lien obtaining or evidencing a security interest in the Musslewhite/Nuing contingency contract. In turn, on April 16, 2007, the Chaffin Trust transferred, assigned, for consideration, the notes to the Kemper, Queen & Schwartz (Jr.) Trust, which assignment was recorded as well. Filing by the Chaffin and Kemper Trusts came after the filing of the government's first notice of federal tax lien of February 1, 2006. That lien now exceeds $30,644.63.

The government filed a second notice of lien on February 1, 2006. This second notice of lien claims taxes, interest and penalties in excess of $9,821.66. It too, predates the Chaffin Trust and UCC filing and assignment. The government's next filing(s), however, came on June 4, 2007, more than 45 days after the Chaffin Trust filings. Schwartz must concede that the first and second notices of federal tax liens filed in 2006 are superior liens. However, he disputes that the 2007 and subsequent notices are also superior. Because the "first in time" rule applies to the filings of federal tax liens of 2006, the Court need not further address a non-issue.

The government contends, however, that its subsequent notices of federal tax liens as to the Musslewhites are also superior to the Kemper Trust UCC Lien even though they were filed after the Kemper Trust UCC Lien filings. In this respect, the government does not challenge the

validity of the Chaffin/Kemper Trust filings or claim any internal defect. The government argues that "[R]esolution of the relative priority of Schwartz's claims versus the federal tax liens turns on the issue of choateness." Essentially, the government argues that Schwartz does not "qualify for the protection [afforded] under either 26 U.S.C. § 6323(a) and (h) or (c)" because his claim was an inchoate claim until May 15, 2009, when the state court approved a settlement and distribution of the proceeds, which included an approval of attorneys fees in the Nuing case. The government argues, and Schwartz disputes, that despite the UCC Lien filings, the attorneys' fee remained inchoate until the state court determined the amount with exactness such that it becomes established. *See United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 89 (1963).

Schwartz contends that the government misreads *Pioneer*, pointing out that in a subsequent case, the Supreme Court ruled favorably to his position. *See United States v. McDermott*, 507 U.S. 447 (1993). In *McDermott* the Supreme Court address, among other issues, the question of how competing liens are to be regarded when the liens attach to after-acquired property of the taxpayer. In that case, the Court determined that, while the state lien was not first in time, the federal tax lien was not necessarily first in time either. *Id*. at 453. The Court held that a federal lien has priority against a competing state law lien concerning after-acquired property where it is shown that the federal lien was filed before the state lien attached to the property. *Id* at 455.

The *McDermott* ruling helps us resolve the case at bar. It may be argued that the attorneys' fee determination constituted Musslewhite's property. Hence, it is until the Musslewhite contingency fee contract became "money," that it remained inchoate. However, this view of McDermott is incomplete. If the contingency fee contract conferred rights to proceeds, even if the dollar amount was not determined at the time the contract was executed and

based conditional performance, the right was fixed when the UCC Lien was recorded. *See McDermott*, 507 U.S. at 453 (footnote 5). There, the Court attached choateness to definiteness—"as to the property in question." Hence, the Court distinguished inchoateness from choateness by determining what constitutes the property. Property is choate "when the identity" of [the property] is established or known. *Id*.

This understanding is not contradicted by *Pioneer*. In *Pioneer*, a lien for attorneys' fee was undetermined, but not with definiteness. The contract called for a "reasonable attorneys' fee" to be established by the court. Here, the fee, while it may be subject to adjustment by a court, was not to be determined by the court. The fee was fixed by the terms of the contract between the Nuings and Musslewhite in 2002. Moreover, there were services performed by Musslewhite prior to the filing of the federal tax lien. And, as well, valuable "consideration" had been paid by the Chaffin/Kemper Trusts prior to the filing of the federal tax liens in 2007.

Fifth Circuit precedent is not violated by Schwartz's claim. In *Rice Investment Company v. United States*, 625 F.2d 565 (5th Cir. 1980), in 1973, Rice loaned money to Handy Stop, Inc. and acquired a security agreement on inventory and after- acquired property. The government filed a notice of federal tax lien on April 26, 1974, and thereafter seized Handy's inventory that was on hand. Rice admitted that it was unaware of the date(s) that Handy acquired the seized inventory and that none of the seized inventory was on hand in 1973 when its security agreement was filed. Consistent with the reasoning and logic stated by the Supreme Court in *McDermott*, although yet to be decided, the Circuit Court held that the government's lien was superior to that of Rice. *See McDermott*, 507 U.S. at 453-54.

More recently, in *Plymouth Savings Bank v. United States*, 187 F.3d 203 (1st Cir. 1994), the First Circuit spoke more to the point concerning right acquired by a contract based on future

9

performance. There, the bank loaned the taxpayer money and the taxpayer executed a note in favor of the bank. The bank obtained a security interest in the taxpayer's tangible and intangible personal property. The taxpayer signed a contract with a hospital for a service to be performed. The bank sued the hospital for the fee owed to the taxpayer and the government challenged the bank's claim on the "after-acquired" property principle. The Court held that § 6323(c) is a safe harbor for after-acquired property claim where a security interest has been perfected. The taxpayer acquired rights to future money when she signed the contract and; therefore, the contract was qualified property, even if conditioned on performance. *Id*. at 207.

In the case at bar, the proceeds in dispute are identifiable proceeds and were acquired at the time of the execution of the contract, perfected by a security interest, UCC Lien properly filed. And, because the proceeds are identifiable, they are considered to be acquired and were acquired at the time the contract was made. *Ibid.*

Therefore, concerning the government's post April 16, 2007, notices of tax liens, Schwartz's claim is superior. It is therefore ORDERED that the government's motion for summary judgment is GRANTED as to the pre-April 16, 2007, tax liens. Consequently, Schwartz's motion for summary judgment is GRANTED concerning any post-April 16, federal tax liens.

SIGNED at Houston, Texas this 10th day of December, 2010.

_____
Kenneth M. Hoyt
United States District Judge